**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**VERIZON NEW YORK, INC.,**

                              **Plaintiff,**

        **v.**                                              **1:04-CV-265
                                                            (GLS/DRH)**

**COVAD COMMUNICATIONS COMPANY,
NEW YORK STATE PUBLIC SERVICE
COMMISSION; WILLIAM M. FLYNN,**
*Chairman*; **JAMES D. BENNETT,**
*Commissioner*; **LEONARD A. WEISS,**
*Commissioner*; **THOMAS J. DUNLEAVY,**
*Commissioner*; **and NEAL M. GALVIN,**
*Commissioner*,

                              **Defendants.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Kellogg, Huber Law Firm        AARON M. PANNER, ESQ.
1615 M Street, N.W.            PAUL B. MATEY, ESQ.
Suite 400                      SCOTT H. ANGSTREICH, ESQ.
Washington, DC 20036

Verizon                        SANDRA D. THORN, ESQ.
Legal Department
1095 Avenue of the Americas
New York, NY 10036

Tobin, Dempf Law Firm          WILLIAM H. REYNOLDS, ESQ.
33 Elk Street
Albany, NY 12207

**FOR THE DEFENDANTS:**

LeBoeuf, Lamb Law Firm          MICHAEL W. PETERS, ESQ.
Albany Office                   ELIZABETH DAILEY MCMANUS, ESQ
One Commerce Plaza
99 Washington Avenue
Suite 2020
Albany, NY 12210

New York State                  JOHN L. FAVREAU, ESQ.
Public Service Commission       MICHELLE L. PHILLIPS, ESQ.
Three Empire State Plaza
Albany, NY 12223

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Verizon New York, Inc. ("Verizon") commenced this federal-

question action for declaratory and injunctive relief under section 252(e)(6)

of the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* ("1996

Act" or "Act") against defendants Covad Communications Company

("Covad"), the New York State Public Service Commission, and its named

chairman and commissioners in their official capacities (collectively

"Commission" or "PSC").  Verizon challenges two rulings by the

Commission.  The first ("arbitration ruling") mandates inclusion of a binding

arbitration clause in the Interconnection Agreement ("Agreement") between Verizon and Covad.  The second ("change of law ruling") relates to the effect of changes in applicable law on the Agreement, and requires the parties to continue to operate under the terms of the Agreement until the Federal Communications Commission ("FCC"), the PSC, or a court rules that the obligations thereunder have been extinguished by the change of law.

Pending under Rule 56 of the Federal Rules of Civil Procedure are the parties' cross-motions for summary judgment.  For the reasons that follow: (1) Verizon's motion on the arbitration ruling is GRANTED, and Covad's and the PSC's cross-motions are DENIED; and (2) Verizon's motion on the change of law ruling is DENIED, and Covad's and the PSC's cross-motions - GRANTED.

## II.  Background

### A.  Statutory Framework

One of the primary purposes of the 1996 Act is to promote competition in the market for local telephone service.  *See AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 371 (1999).  To end what was considered a natural monopoly in this field, the Act prohibits states from enforcing laws

3

that impede competition in local markets and imposes a variety of duties on

incumbent local exchange carriers (I-LECs) designed to induce competitors

to enter those markets.  *See AT & T Corp.*, 525 U.S. at 371.

To effectuate those goals, the Act requires I-LECs to negotiate and

allow access to their existing networks by competitive local exchange

carriers (C-LECs).  *See* 47 U.S.C. §§ 251(c)(2), 252.  The Act imposes on

the parties the duty to "negotiate in good faith" the terms of their

agreement.  47 U.S.C. § 251(c)(1).  The parties have the option of

negotiating such access without regard to the duties imposed by sections

252(b) and (c) of the Act.  47 U.S.C. § 252(a)(1).

In case the negotiations fail, either party can petition the appropriate

State commission to arbitrate and resolve the disputed matters.  47 U.S.C.

§ 252(b)(1).  The Act provides that in arbitrating the dispute, the

commission "shall limit its consideration ... to the issues set forth in the

petition and in the response," and "shall resolve each issue ... by imposing

appropriate conditions as required to implement subsection (c) of this

section upon the parties to the agreement ... ."  47 U.S.C. §§ 252(b)(4)(A),

252(b)(4)(C).  In relevant part, section 252(c) requires the State

commission to "ensure that such resolution and conditions meet the

4

requirements of section 251 ... including the regulations prescribed by the [FCC] pursuant to section 251 ... ."  47 U.S.C. § 252(c)(1).

An agreement reached through arbitration must then be submitted for final approval by the State commission, which can reject it for failure to comply with the terms of section 251 or FCC-enacted regulations.  47 U.S.C. § 252(e)(1)-(2).  The arbitrated agreement is deemed approved if the commission takes no action within 30 days after its submission.  47 U.S.C. § 252(e)(4).  A party aggrieved by the commission's determination "may bring an action in an appropriate Federal district court to determine whether the agreement ... meets the requirements of section 251" of the Act.  47 U.S.C. § 252(e)(6).

## B.  Proceedings before the PSC[1]

In June 2000, Verizon, an I-LEC, and Covad, a C-LEC, began negotiations to replace their expiring interconnection agreements (in New York as well as other states).  On September 10, 2002, after they reached an impasse on several terms of the Agreement, Covad filed a petition for arbitration with the PSC.  On June 23, the Commission issued an Order

---

[1]Based on the parties' cross-statements of material facts pursuant to N.Y.N.D. Local Rule 7.1 and accompanying exhibits.  *Dkt. Nos. 26-28.*  The parties have stipulated that there are no factual disputes.

resolving the issues before it.  *See Petition of Covad Communications Company, Pursuant to Section 252(b) of the Telecommunications Act of 1996, For Arbitration to Establish an Intercarrier Agreement with Verizon New York Inc., Arbitration Order,* Case 02-C-1175 (N.Y.S. Public Servs. Comm'n, June 26, 2003) *("Arbitration Order"), Ex. 1, Dkt. No. 1.*  Pursuant to the Commission's Arbitration Order, Verizon and Covad entered into the subject Interconnection Agreement.  *See Agreement Effective as of December 8, 2003 by and between Covad Communications Company and Verizon New York, Inc. For the State of New York, Ex. 2, Dkt. No. 1.* Verizon contests the following rulings by the Commission.

      *1.*   <u>*Arbitration Ruling*</u>

      The parties agreed on the general terms of a dispute resolution clause which provided, in relevant part, that any dispute with respect to the interpretation, enforcement, or terms of the agreement was to be addressed  in good faith.  *See Interconnection Agreement, ¶ 14.1.*  Upon agreement, the parties could use other alternative dispute resolution procedures such as private mediation.  *Id.*  If, after notice and negotiations, the parties were unable to resolve their dispute within 45 days, each could commence proceedings before the FCC, the PSC, or a court.  *Id. ¶ 14.2.*

The parties disagreed, however, on how to resolve disputes that directly and materially affected the parties' end user customers.  Covad sought, and Verizon opposed, submission of such issues to binding arbitration after five days of negotiation.  Covad contended that the Commission had the authority to impose such a requirement under the Act, as it had done in a prior case involving Verizon.[2]  Verizon argued that arbitration is "a matter of consent, not coercion,"  and that the Commission did not have the authority to require the parties to submit to arbitration their disputes arising from the Interconnection Agreement because the 1996 Act did not modify existing law unless expressly provided.

The Commission noted that it had previously rejected Verizon's rationale and adopted Covad's position.  *See Arbitration Order at 14-15*. As a result, paragraph 14.3 of the agreement provides in relevant part that: "If the issue to be resolved ... directly and materially affects service to ... end user customers, then the period of resolution of the dispute through negotiations before [it] is to be submitted to binding arbitration shall be five

---

[2]*See Joint Petition of AT&T Comms. of N.Y., Inc., TCG New York, Inc. and ACC Telecom Corp. Pursuant to Section 252(b) of the Telecomms. Act of 1996 for Arbitration to Establish an Interconnection Agreement with Verizon New York Inc.*, Case 01-C-0095, *Order Resolving Arbitration Issues* (NY PSC July 30, 2001), *Ex. E, Dkt. No. 27*; and *Order on Rehearing* (NY PSC Dec. 5, 2001), *Ex. E, Dkt. No. 28* (jointly cited as "*2001 AT&T decision*").

(5) days. ... [T]he arbitration shall be conducted pursuant to the expedited

procedures rules of the ...  American Arbitration Association ... ."

*Interconnection Agreement ¶ 14.3.*

> B.   <u>*Choice of Law Ruling*</u>

The parties also agreed on the terms of a general change of law

provision, which provided that they were obligated to negotiate in good faith

any amendment of the Interconnection Agreement in case of changes in

statutory, decisional, or regulatory law.  *See Interconnection Agreement ¶*

*4.6.*  If the parties were unable to agree on an amendment within 30 days

of the effective date of the change of law, each could commence

proceedings before the FCC, the PSC, or a court.  *Id.*

In addition, Verizon proposed a provision which would allow it to

discontinue, after a grace period of 45 days, services or benefits under the

Interconnection Agreement if the change of law relieved it of such

obligation.  Verizon proposed a similar provision with respect to the parties'

Unbundled Network Elements (UNE) attachment.  Covad proposed

language that would require the parties' continued performance under the

terms of the Interconnection Agreement during renegotiation or dispute

resolution, unless the PSC, FCC, or a court determined that the Agreement

needed to be modified in order to bring it in compliance with the 1996 Act.
*See Arbitration Order at 4-5.*

Here, Verizon argued that the Commission was obligated to resolve disputes over interconnection terms in accordance with current law, and that because federal law changed over time, its proposed provision would help eliminate inconsistencies among interconnection agreements and would ensure that all C-LECs stood on equal footing.  It argued that Covad's proposal would require Verizon to provide services under the Agreement indefinitely, even after its obligation had been terminated, and that the 45-day period would fairly balance the parties' interests.  *Id.*

Covad contended that both the Commission and the FCC had previously rejected language similar to Verizon's current proposal.  It argued that Verizon's language would allow the latter to unilaterally discontinue service during renegotiation, based solely on its self-interested interpretation of the change of law.  Covad argued that its own proposal properly maintained the status quo until any disputes are resolved.  *Id.*

The PSC found that its *2001 AT&T decision* fairly balanced the parties' interests, did not see any reason to depart from that holding, and adopted Covad's proposed wording.  *Order at 6-7.*  As a result, the

9

agreement provides that:

"[d]uring the pendency of any renegotiation or dispute resolution, the Parties shall continue to perform their obligations under the terms and conditions of this Agreement, unless the Commission, the FCC, or a court ... determines that modifications ... are required to bring [the agreement] in compliance with the Act, in which case the Parties shall perform their obligations in accordance with such determination or Ruling."
*Interconnection Agreement ¶ 4.7.* The UNE attachment was made subject to the above terms.

On December 8, 2003, the parties submitted their finalized Interconnection Agreement conforming with the Commission's decision, which became effective, by operation of law, on January 7, 2004. This action followed.

## C.  Procedural Background

Verizon commenced this action on March 11, 2004. *Dkt. No. 1.* The instant cross-motions were filed on July 23, and response papers - on August 20, 2004. *Dkt. Nos. 26-28, 30-32.* Oral argument was heard on January 6, 2005; decision was reserved.

## III.  Discussion

10

## A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). The facts in this case are undisputed. Accordingly, the court's task is to determine whether, as a matter of law, the PSC's two underlying rulings violated the 1996 Act. *Accord* 47 U.S.C. § 252(e)(6).

While the 1996 Act is silent on the issue, the standard of review appears settled. The court's review of the PSC's decision is limited to the administrative record created by the Commission. *MCI Telecomms. Corp. v. N.Y. Tel. Co.*, 134 F. Supp. 2d 490, 500 (N.D.N.Y. 2001) (citations omitted). The court reviews the Commission's findings of fact under the arbitrary and capricious standard; questions of law as to the Commission's interpretation of the Act are reviewed *de novo* and are not entitled to any deference. *Id.* at 500-01 (citations omitted).

## B. Analysis

11

1.     *The Arbitration Ruling*

Verizon claims that the PSC violated the 1996 Act by compelling it to

submit to binding arbitration on issues affecting end user customers.

*Verizon Complaint, ¶ 22, Dkt. No. 1*.[3]  Specifically, Verizon argues that the

PSC's decision contravenes the principles underlying the Federal

Arbitration Act (FAA).  Verizon contends that nothing in the 1996 Act

specifically authorizes a state commission, in this case the PSC, to impose

mandatory arbitration. Verizon's position, albeit hypertextual, is on point.

Arbitration is "a matter of consent, not coercion."  *EEOC v. Waffle*

*House, Inc.*, 534 U.S. 279, 294 (2002) (quotation omitted); *See Chicago*

*Pneumatic Tool Co. v. Smith*, 890 F. Supp. 100, 112 (N.D.N.Y. 1995)

(citations omitted).  The FAA allows parties to choose to resolve their

dispute in binding arbitration, but does not compel them to do so.  *See*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

(1983).  As Verizon points out, the 1996 Act's savings clause states that

---

[3]Verizon further claims that the PSC's decision here is also contrary to state law.  A district court's review, however, is limited to determining whether the state commission's ruling complies with sections 251 and 252 of the 1996 Act, and not state law.  *See* 47 U.S.C. § 252(e)(6); *accord P.R. Tel. Co. v. Telecomms. Regulatory Bd. of P.R.*, 189 F.3d 1, 14-15 (1st Cir. 1999).  Accordingly, the court declines to entertain the parties' arguments relative to New York State law.  Nevertheless, even if the court were to address this issue, it would likely reach the same conclusion, as there appears to be no substantive difference between the federal and New York underlying arbitration.  *See, e.g.*, *Romano v. Canuteson,* 11 F.3d 1140, 1141 (2d Cir. 1993) and cases cited therein.

12

"[the Act] shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments."  47 U.S.C. § 152, historical and statutory notes, "Applicability of Consent Decrees and Other Law," § (c)(1); *accord Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 323 (2d Cir. 2000); *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 915 (S.D.Cal. 2004).

The PSC and Covad argue that the Commission's decision is supported by its wide authority under the Act to impose reasonable conditions and terms in arbitrating disputes over parties' interconnection agreements.  *See* 47 U.S.C. § 252(b)(4)(C).  They insist that this section, by requiring state commissions to arbitrate all open issues between the parties, somehow empowers the PSC to render a disposition based solely on the alternatives proposed by the parties.  They further argue that the arbitration clause is reasonable and necessary to protect, as a matter of policy, service to, and the interests of, end user customers.  These arguments are misplaced, as they do not address the issue whether the PSC's decision here is consistent with or contrary to the 1996 Act.

As the Supreme Court has explained,

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (footnotes omitted). The dispositive inquiry here is whether the PSC's decision was "procedurally and substantively in compliance with the Act and the implementing regulations." *U.S. West Comms., Inc. v. Hix*, 986 F. Supp. 13, 19 (D.Colo. 1997); *see also Bell Atlantic-Delaware, Inc. v. McMahon*, 80 F. Supp. 2d 218, 227 (D.Del. 2000). In other words, the Commission's decision will be deemed contrary to the 1996 Act if it has the effect of altering the parties' substantive and/or procedural rights in a manner not explicitly provided by or implicitly consistent with the Act.

Section 252(c) lists certain specific duties of the PSC, such as

14

establishing rates for interconnection services and network elements, and supervising the implementation of the statutory terms and conditions by the parties in their interconnection agreement.  *See* 47 U.S.C. §§ 252(c)(1)-(3). Section 252(b)(4)(C) provides that in arbitrating interconnection disputes between the parties, a "state commission *shall* resolve each issue by imposing *appropriate* conditions as required to implement the [Act and FCC regulations]." (emphases added).   Other than requiring that the Commission resolve all open issues before it, the statute provides little guidance on what appropriate conditions can be imposed.

Here, Covad and the Commission argue that because the Act does not provide specific mechanisms to be employed by state commissions in enforcing interconnection agreements, the PSC had wide discretion in fashioning its order.  Their position is not supported by the administrative and judicial precedent cited.

In its *2001 AT&T decision*, the PSC did find that "a provision for expedited resolution of service-affecting disputes [was] an essential element of the agreement" because "the failure to seasonably address service issues could directly impact customers."  *Ex. E, p. 12, Dkt. 28.*  In that decision, the PSC explicitly required that an expedited dispute

15

resolution ("EDR") procedure[4] be included as an alternative to arbitration because the latter was shown to be inadequate.  Notably, however, this EDR was to be conducted according to the PSC's own expedited rules and was subject to final approval by the PSC.  Moreover, and significantly, the parties in that case had already consented to submit their disputes to arbitration.  In contrast, here, the parties did not agree to arbitrate their disputes, the Agreement does not provide for final review and approval of the arbitrated dispute by the PSC, and the Agreement provides that arbitration is to be conducted pursuant to the expedited commercial arbitration rules of the American Arbitration Association.  The PCS's order in this respect conflicts with the 1996 Act because it affects the parties' recourse to the mechanism of administrative and judicial review of their dispute.

The PSC's decision affects both the parties' rights and the mechanism of review contemplated by the Act in two significant respects.  First, it empowers a third party (a commercial arbitrator) to render a binding decision on the parties' disputes.  While the parties here have not directly

_____

[4]*Expedited Dispute Resolution Process - for Disputes Involving Competing Telecomms. Carriers, Notice to All Parties*, Case 99-C-1529 (NY PSC Nov. 18, 1999), *Ex. P, Dkt. No. 32*.

16

raised the issue, meaningful administrative or judicial review of a final and

binding decision by an arbitrator is problematic.  *See, e.g.*, *Memorandum*

*Opinion and Order, Broadview Networks, Inc. v. Verizon Tel. Cos. &*

*Verizon New York*, No. EB-03-MD-021, DA 04-3569, 2004 WL 2544959

(F.C.C. Nov. 10, 2004).  Second, the PSC's decision to delegate final

decision making authority to a third party results in a *de facto* abdication of

its responsibilities under the 1996 Act.  As already noted, state

commissions are required to ensure that parties' agreements comply with

the goals and purposes of the Act.  *See generally* 47 U.S.C. §§ 251, 252 .

Moreover, state commissions retain the authority, and remain charged with

the responsibility, to enforce interconnection agreements.  *See, e.g.*,

*Memorandum Opinion and Order, Starpower Comms., LLC Petition for*

*Preemption of Jurisdiction of the Va. State Corp. Comm'n*, 15 FCC Rcd

11277, 11778, (2000);  *see also BellSouth Telecomms., Inc. v. MCIMetro*

*Access Transmission Servs., Inc.*, 317 F.3d 1270, 1274 (11th Cir. 2003)

(*en banc*); *Global Naps, Inc. v. FCC*, 291 F.3d 832 (D.C. Cir. 2002);

*Southwestern Bell Tel. Co. v. Connect Comms. Corp.*, 225 F.3d 942 (8th

Cir. 2000); *Southwestern Bell Tel. Co. v. PUC*, 208 F.3d 475, 479-80 (5th

Cir. 2000); *Southwestern Bell Tel. Co. v. Brooks Fiber Comm. Of Okla.*,

235 F.3d 493, 497 (10th Cir. 2000); *Starpower Comms., LLC, Petition for Preemption, Memorandum Opinion and Order*, 15 FCC Rcd 11277 (2000); *accord Verizon Maryland, Inc. v. PUC*, 535 U.S. 635, 638 n.2 (2002); *Illinois Bell Tel. Co. v. WorldCom Techs., Inc.*, 179 F.3d 566, 573 (7th Cir. 1999), *cert. dismissed*, 535 U.S. 682 (2002) (assuming without discussion that state commissions have authority to construe and enforce interconnection agreements).   Accordingly, the PSC's decision to delegate this responsibility to an entity or party not contemplated by the statutory mechanism of review is contrary to the 1996 Act.

Covad and the Commission next argue that *MCI Telecommunications Corporation v. Pacific Bell*, Nos. C97-0670 *et al.*, 1998 U.S. Dist LEXIS 17556 (N.D.Cal. Sept. 29, 1998) supports the PSC's decision.   This argument is equally unpersuasive.   In *MCI Telecommunications*, the dispute resolution provision in the parties' agreement was found not to violate the 1996 Act because it provided that it could not be applied to prevent either party from invoking a remedy under the Act or FCC regulations.   *MCI Telecomms. Corp.*, 1998 U.S. Dist LEXIS 17556 at *97-98.   In that case, however, the binding arbitration clause was an option available to the parties.   *See id.*   By contrast, in this case, the mandatory

binding arbitration is the only resolution method provided for end-user

service affecting disputes.  While Covad and the PSC attempt to argue that

arbitration in this case is optional and voluntary, the clear and

unambiguous language of the Interconnection Agreement is to the

contrary.  While section 14.2 allows the parties to seek any remedy

available under the Act, section 14.3 specifically exempts the above narrow

category and subjects it to the only mechanism provided therein - binding

arbitration.  Moreover, in light of the above, Covad's contention that the

arbitration requirement does not entirely preclude reliance upon other

remedies is misplaced, if not misleading.   Clearly, *MCI*

*Telecommunications* establishes that arbitration of disputes arising out of

interconnection agreements will not violate the 1996 Act, but *only* where

other remedies consistent with the Act's review mechanisms are available.

For the reasons stated, the PSC's arbitration ruling is contrary to the

1996 Act.  Accordingly, Verizon is entitled to judgment on this issue.

### 2.  The Change of Law Ruling

Verizon's second claim is that the PSC violated the 1996 Act by

requiring the parties to adhere to their existing obligations pending

administrative or judicial declaration that their Interconnection Agreement

should be modified to comply with a change of law.  *Compl. ¶25.*  Verizon

claims that nothing in the 1996 Act authorizes the PSC to prolong the

operation of the parties' obligations under the Agreement for an indefinite

period after they have been eliminated or modified by the change of law.

Verizon also argues that the PSC's decision is inconsistent with its own

precedent on change of law issues.

In opposition, Covad and the PSC argue that the latter's decision

here is in the public interest and prevents discriminatory results.

Specifically, they contend that the PSC's decision, far from achieving the

result proposed by Verizon, does nothing more than maintain the status

quo between the parties until a neutral decision maker resolves the

contested issues between them.  Covad and the PSC further claim that the

decision is consistent with Commission and FCC precedent.

Section 4.6 of the parties' interconnection agreement requires them

to "promptly renegotiate in good faith and amend the interconnection

agreement if there is a change of law that materially affects any material

provision"  thereof.   Should the parties fail to reach an agreement, either of

them has the option of pursuing any available legal or equitable remedies

without first resorting to dispute resolution.  Section 4.7, the one at issue

here, provides that the parties will adhere to their existing obligations under the agreement unless the PSC, FCC or a court determines that the agreement must be modified to comply with the change of law. Functionally, the section avoids further disputes and unnecessary requests for injunctive relief.

Verizon claims that the PSC has no authority under the 1996 Act to alter the effective date of the changes of law.  Verizon is correct that the effective date of a change of law is the sole prerogative of the decision-maker.  It claims that the PSC's decision usurps that authority.  This, however, is not what the PSC order purports to do.  Verizon hypothesizes that under the condition established by the PSC, Covad has the power to unilaterally and indefinitely extend the parties' obligations after they have been extinguished by a change of law, by refusing to negotiate and seeking subsequent agency or judicial declaration that the change of law has, in fact, affected their Agreement.  It claims that the proper way of preserving the status quo would be by means of a petition to stay the source decision or of a motion for preliminary or injunctive relief.  The PSC and Covad contend that, to the contrary, the status quo provision serves to prevent Verizon from interpreting a change of law in its own interest and unilaterally

discontinuing service.  The Court finds Covad's position persuasive for the following reasons.

The Act imposes on all parties a duty to negotiate in good faith.  *See* 47 U.S.C. §§ 251(c)(1), 252(b)(2).  Moreover, as Verizon itself points out, the interconnection agreements entered into pursuant to the 1996 Act are far from being consensual contracts between parties.  They are instead creations of federal law and tools through which the 1996 Act is implemented and enforced.  *Verizon Md., Inc. v. Global Naps, Inc.*,  377 F.3d 355, 364 (4th Cir. 2004) (citation omitted); *see also MCI WorldCom Communications, Inc. v. Dept. of Telecomms. & Energy*, 442 Mass. 103, 113 (2004).  Thus, these interconnection agreements "represent nothing more than an attempt to comply with the requirements of the 1996 Act." *AT&T Communications. of the S. States, Inc. v. Bell South Telecomms., Inc.*, 229 F.3d 457, 465 (4th Cir. 2000).

Verizon's concern that Covad might abuse the status-quo-preserving provision is misplaced.[5]  Covad does not dispute its obligation to comply with changes of law which are self-executing as to the parties' Agreement.

_____

[5]If for nothing more than the provisions of section 251(c)(1), which imposes on the parties the duty to negotiate in good faith.

22

Indeed, any contrary position by Covad would be contrary to its duty to act in good faith.  Instead, Covad argues that the provision is necessary where a change of law is not self-executing, and might be subject to differing interpretations.  Thus, to the extent the PSC's order seeks to prevent uncertainty in the parties' relations caused by either side's unilateral and self-interested interpretation of changes of law whose effect on the parties' Agreement is not self-executing or clear, the effect of freezing the parties' obligations until an administrative or judicial determination changes the Agreement is reasonable and does not run afoul of the requirements of the 1996 Act.

The PSC's rationale also finds support in recent decisions on this issue by the FCC.  The FCC has recognized that many of its decisions are not self-executing, and that modifications of interconnection agreements to comply with and reflect new rules cannot be achieved overnight.  *See Report and Order on Remand and Further Notice of Proposed Rulemaking, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16978, ¶ 700 (2003) ("*Triennial Review Order*"), *vacated in part and remanded*, *United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004) ("*USTA II*").  In parts of its *Triennial*

*Review Order* not vacated by *USTA II*, the FCC indicated that competitors should be allowed to negotiate new terms and resolve disputes over differing interpretations of its rules.  *See Triennial Review Order* at ¶ 700.[6]

Indicating that the lag involved in negotiating and implementing new contract language did not warrant its direct intervention, the FCC nevertheless observed that "delay in the implementation of the new rules ... will have an adverse impact on investment and sustainable competition in the telecommunications industry," and required the parties (even those with extant change of law provisions) to follow certain timetables consistent with section 252 (a maximum transition period of nine months) in renegotiating their agreements.  *Id.* at ¶¶ 702-03.  The FCC further noted that the statutory duty to negotiate in good faith applied, and warned that parties who failed to so negotiate or delayed the process could be found in violation of section 251(c)(1).  *Id.* at ¶¶ 704, 706.

In a subsequent and related order in the case, The FCC required parties to adhere to certain preexisting obligations pending its promulgation of final unbundling rules consistent with the mandate of *USTA II*.  *See*

---

[6]The FCC explicitly declined to "override the section 252 process and unilaterally change all interconnection agreements to avoid any delay associated with renegotiation of contract provisions," because "[p]ermitting voluntary negotiations for binding interconnection agreements is the very essence of section 251 and section 252."  *Id.* at ¶ 701.

24

*Order and Notice on Proposed Rulemaking, Review of Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 19 FCC Rcd 16783.  There, noting its major objectives - promoting competition and protecting consumers - as well as the "pressing need for market stability," the FCC implemented a transitional plan intended to preserve certain service obligations of I-LECs for an initial period of six months, and allowing limited modifications for an additional six-month period, pending the promulgation and entry into force of its final rules.  *Id.* at ¶¶ 1, 16.  Notably, this plan effectively froze I-LECs' obligations as they existed on June 15 2004,[7] and allowed C-LECs continued access to network elements.  *Id.* at ¶ 16.  Finding that some I-LECs intended to stop providing access to certain network elements, the FCC expressed concern that such actions would "have the effect of disrupting competitive provision of telecommunications services to millions of customers.  *Id.* at ¶ 17.  Specifically, the FCC declined to adopt a completely new set of interim rules (that would comply with the *USTA II* mandate), and decided to maintain the status quo, reasoning that "the temporary withdrawal of access to UNEs ... would

––––––––––––––––––––

[7]The day before the *USTA II* mandate issued.  *See United States Telecom Ass'n v. FCC*, No. 00-1012, Order (D.C.Cir. Apr. 13, 2004) (staying mandate through June 15, 2004).

threaten irreparable - and perhaps debilitating - harm to [C-LECs], which
rely on such elements to serve their customers, and which might well be
unable to recapture customers lost during a UNE-free interim period."  *Id.* at
¶ 26.

Finally, Verizon argues that the PSC's decision is inconsistent with its
own precedent.  *See Petition of Global NAPs, Inc., Order Resolving
Arbitration Issues*, Case 02-C-0006 (NY PSC May 24, 2002) ("*Global NAPs
Order*"), *Ex. F, Dkt. No. 27*.  This court disagrees.  In *Global NAPs*, the PSC
rejected a proposal that the status quo upon a change of law remain in
effect until all appeals on the underlying source decision have been
exhausted.  *Global NAPs Order* at 21.  The effect of the current PSC
disposition is not inconsistent with Global NAPs as it does not purport to
alter the effective date of a change of law.  Instead, it provides a
reasonable time frame and negotiation procedure intended to assist the
parties in bringing their Agreement in compliance with the new law.  The
status quo requirement is a reasonable means to ensure uninterrupted
service to customers and preserve the competitive character of the parties'
relationship.

In light of the above, the PSC's decision to freeze the parties'

obligations until a qualified administrative or judicial body decides whether and to what extent a change of law affects the parties' relationships, by ensuring that no disruption in service to customers will occur and that the competitive aspect of the parties' relationship will be maintained by protecting both the incumbent and competitive participants, is reasonable and consistent with the 1996 Act.  Accordingly, Covad and the PSC are entitled to judgment on this issue.

**WHEREFORE,** it is hereby

**ORDERED** that Verizon's motion for summary judgment on Count I of the Complaint is **GRANTED**, and Covad's and the PSC's cross-motions are **DENIED**; it is further

**ORDERED** that Verizon's motion for summary judgment on Count II of the Complaint is **DENIED**, and Covad's and the PSC's cross-motions are GRANTED; and it is further

**ORDERED** that the clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated:      February 3, 2006

Albany, New York

Gary L. Sharpe
U.S. District Judge